**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALLA RADA, *on behalf of herself and all others similarly situated*,

Plaintiff,

VERSANT MEDIA, LLC and E! ENTERTAINMENT TELEVISION, LLC,

Defendants.

Case No. 1:25-cv-10679-ALC

**DEFENDANTS VERSANT MEDIA AND E! ENTERTAINMENT'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS


**INTRODUCTION** ... 3

**FACTUAL BACKGROUND** ... 4

- **I. E! Entertainment and Its Terms of Service** ... 4
- **II. Plaintiff's Alleged Experiences on the Website** ... 5
- **III. The Arbitration Clause and Class Action Waiver** ... 5

**LEGAL STANDARD** ... 7

**ARGUMENT** ... 8

- **I. The FAA Governs the Parties' Arbitration Agreement** ... 8
- **II. Plaintiff Assented to the Terms, Which Requires Plaintiff to Arbitrate at NAM** ... 9
  - **A. Defendants Provided Reasonably Conspicuous Notice of the Terms and Arbitration Agreement** ... 9
  - **B. Plaintiff Manifested Assent to the Terms and Arbitration Agreement** ... 11
- **III. The Arbitrator Must Resolve Any Challenges to the Scope and Enforceability of the Arbitration Agreement** ... 13
- **IV. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement** ... 15
- **V. Upon Compelling Arbitration, the Court Should Dismiss the Case** ... 16

**CONCLUSION** ... 17

Defendants Versant Media, LLC ("Versant") and E! Entertainment Television, LLC ("E! Entertainment") move to compel arbitration of this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").[1]

## INTRODUCTION

This case presents an open and shut case for arbitration. E! Entertainment's website, www.eonline.com ("Website"), allows users to access the latest entertainment news. Use of the Website is governed by E! Entertainment's Terms of Service ("Terms"). E! Entertainment provided conspicuous notice through a clear banner that by continuing to use the Website, users agreed to those Terms. Plaintiff, by her own allegations, acted on that banner and then continued to use the Website, manifesting her assent to the Terms. Those Terms contain an arbitration clause and a class action waiver, both of which cover all of Plaintiff Rada's claims. Moreover, the parties expressly agreed to delegate all disputes over arbitrability to the arbitrator. The Terms are valid and enforceable under the FAA. Plaintiff agreed to arbitrate all of her disputes, including threshold issues of arbitrability and scope.

Notwithstanding the foregoing, on December 23, 2025, Plaintiff Alla Rada filed this class action complaint, alleging that Versant and E! Entertainment, an affiliate of Versant, violated the Federal Wiretap Act, 18 U.S.C. § 2150; the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 638; the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and committed the torts of intrusion

[1] Because the parties agreed to resolve all disputes in an arbitral forum—and not in court—E! Entertainment and Versant Media do not (and need not) respond to the substance of the Complaint at this time. *See, e.g.*, *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607-08 (10th Cir. 2011) (explaining a "defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint" because forcing a party to "*engag*[*e*] *in the merits of the litigation*—in order to enforce its right *not to litigate* is a non-sequitur") (emphases in original). E! Entertainment and Versant Media reserve their rights to seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) if this dispute remains in Court, which it should not, for the reasons described in this memorandum.

upon seclusion; unjust enrichment; and common law fraud, deceit and/or misrepresentation. Compl. ¶ 14. While Versant and E! Entertainment contest each of these allegations, evaluating the merit of these claims is a question for another day—and more importantly, for another forum entirely. In filing this action, Plaintiff disregarded the agreement to resolve all disputes with E! Entertainment and Versant through individual arbitration. This Court should enforce that agreement and compel Plaintiff Rada to arbitrate her claims on an individual basis.

## FACTUAL BACKGROUND

### I. E! Entertainment and Its Terms of Service

Versant is a publicly traded media company headquartered in New York, New York. *Id.* ¶ 16. It owns and operates E! Entertainment, which delivers pop culture news, celebrity updates, and award show coverage. *Id.* ¶ 2. E! Entertainment's platform is available at https:// https://www.www.eonline.com. Starting on October 29, 2025 and continuing today, when users accessed E! Entertainment's website, they were immediately met with a cookie banner stating, among other things: "By continuing, you agree to our Terms. You also acknowledge that our updated Privacy Policy applies, including your existing data." *Id.* ¶ 2, fig.1; *see* Declaration of Sameer Arya ¶ 4 ("Arya Decl."). Users can click "Continue" or choose to modify their privacy setting by clicking on "Your Privacy Choices." Compl. ¶ 2, fig.1. The cookie banner remains displayed unless and until the user selects one of those two options. Arya Decl. ¶ 6. Below is an image of the cookie banner as it has appeared on the Website since October 29, 2025:



## II. Plaintiff's Alleged Experiences on the Website

Plaintiff alleges that she visited the Website "at least once in 2024," and again "more recently" in connection with this case. Compl. ¶ 5. Although she does not identify the date of her "more recent[]" visit, the Complaint's allegations make clear it was after E! Entertainment implemented its cookie banner. Namely, Plaintiff affirmatively states she saw and interacted with the cookie banner. *Id.* Specifically, she alleges that she navigated to the "Your Privacy Choices" button on the banner to opt out of the sale and sharing of her personal information. *Id.* After doing so, the Complaint alleges, she then continued to browse and interact with the Website. The Complaint also includes multiple screenshots of the cookie banner present on the Website. *Id.* at 3, fig.1; *id.* at 23, fig.4.

## III. The Arbitration Clause and Class Action Waiver

As the Complaint itself makes clear, the cookie banner hyperlinked to Defendants' Terms and Privacy Policy. *Id.* at 3, fig.1; *id.* at 23, fig.4. The Terms prominently disclosed that users were assenting to mandatory individual arbitration. The very first paragraph disclosed in bold and all capital letters that the Terms contain an arbitration provision:

> **<u>IMPORTANT NOTE</u>: PLEASE READ THESE TERMS OF SERVICE AND THE TERMS OF SERVICE FOR SPECIFIC VERSANT SERVICES LINKED BELOW CAREFULLY AS THEY MAY IMPACT YOUR LEGAL RIGHTS IN THE EVENT OF A DISPUTE BETWEEN US. SPECIFICALLY, PLEASE REFER TO THE SECTION TITLED "RESOLVING DISPUTES BETWEEN YOU AND VERSANT" OR, AS APPLICABLE "RESOLVING DISPUTES BETWEEN YOU AND" THE APPLICABLE VERSANT SERVICE, WHICH REQUIRES THAT CERTAIN DISPUTES BE RESOLVED THROUGH MANDATORY BINDING ARBITRATION AND PRECLUDE YOU FROM LEADING OR PARTICIPATING IN A CLASS ACTION, AS WELL AS THE SECTIONS TITLED "CLASS ACTION WAIVER" AND "JURY TRIAL WAIVER" WHICH CONTAIN A CLASS ACTION WAIVER AND JURY TRIAL WAIVER FOR NON-ARBITRABLE DISPUTES.**

Arya Decl. Ex. A at 1.

The full arbitration provision in the Terms appears in the section "Resolving Disputes Between You and Versant." *Id.* at 11. That section sets forth the parties' agreement to arbitrate "all" "Disputes" between website visitors and Versant:

> In accordance with the notice and opt-out provisions set forth herein, this Arbitration Agreement is intended to be interpreted broadly and it applies to all Disputes between you and Versant, including but not limited to (1) claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement, or any prior agreement; and (2) claims that may arise after the termination of this Arbitration Agreement.

*Id.* at 12. "Disputes" is defined as any disputes arising from or relating to the Versant Services, which includes all "websites, software, mobile applications, user interfaces, features, functionalities, recommendations and reviews, content, games, interactive TV, or other products and online services" made available by Versant Media, LLC, and its affiliated companies, such as E! Entertainment. *Id.* at 1.

The arbitration provision also includes a broad delegation provision delegating all questions of "interpretation, applicability, enforceability, formation, or performance" of the arbitration agreement to the arbitrator:

> Except as set forth in the paragraph below titled "Exceptions to Informal Dispute Resolution and Arbitration Agreement," the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all Disputes. You and Versant further agree that arbitrable Disputes include but are not limited to issues arising out of or relating to the interpretation, applicability, enforceability, formation, or performance of this Arbitration Agreement, including, but not limited to, any claim that all or any part of these terms are void or voidable, whether a claim is subject to arbitration, and any dispute regarding the payment, non-payment, or timing of any administrative or arbitrator fees.

*Id.* at 12. The arbitration provision also includes a class action waiver, prohibiting class or collective actions like this one:

> YOU AND VERSANT ACKNOWLEDGE AND AGREE THAT, TO THE MAXIMUM EXTENT ALLOWED BY LAW, AND EXCEPT AS PROVIDED HEREIN BELOW, ANY ARBITRATION SHALL BE CONDUCTED IN AN

> INDIVIDUAL CAPACITY ONLY AND NOT AS A CLASS OR OTHER REPRESENTATIVE ACTION (INCLUDING, WITHOUT LIMITATION, ANY PRIVATE ATTORNEY GENERAL ACTION), AND THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO RESOLVE AN INDIVIDUAL PARTY'S CLAIM; NOTWITHSTANDING THIS ACKNOWLEDGEMENT, YOU AGREE THAT ANY ARBITRATION INVOLVING YOU MAY PROCEED ON A CONSOLIDATED BASIS IF AND ONLY IF VERSANT PROVIDES ITS CONSENT TO CONSOLIDATE IT IN WRITING.

*Id*.

In addition, the arbitration provision includes provisions identifying the rules and procedures for arbitration (none of which apply here), carving out certain matters from the arbitration requirement, and giving users the right to opt out of the arbitration provision within 30 days. Plaintiff does not allege that she opted out of the arbitration agreement. The arbitration provision also includes an informal dispute resolution provision which Plaintiff also does not allege she complied with (because she did not comply with it). Finally, the Terms provide that they "shall be governed by the laws of the U.S. and the State of New York." *Id.* at 16.

## LEGAL STANDARD

"The Supreme Court has held that the FAA established 'a liberal federal policy favoring arbitration agreements' and that courts must 'rigorously . . . enforce arbitration agreements.'" *Maldonado v. Nat'l Football League*, No. 1:22-CV-02289, 2023 WL 4580417, at *1 (S.D.N.Y. July 18, 2023) (Carter, J.) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018)). Section 2 of the FAA declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4, in turn, provides that parties can petition a district court for an order compelling arbitration. *Id.* § 4. "In deciding whether claims are subject to arbitration, the Court must determine (1) whether the parties entered into a valid agreement to arbitrate at all and (2) whether the claim

falls within the scope of the agreement." *Maldonado*, 2023 WL 4580417, at *2 (citing *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). After deciding that a plaintiff's claims are "referable to arbitration under an agreement in writing," a court shall order arbitration to "proceed in the manner provided for" in the agreement. *Id.* § 4.

## ARGUMENT

Plaintiff Rada agreed to Versant's Terms by acting on the Website cookie banner and then continuing to navigate the Website. Those Terms include a broad agreement to arbitrate that covers all disputes with E! Entertainment and Versant relating to the Website. To the extent that Plaintiff now challenges the validity or scope of the arbitration provision, the parties agreed to delegate such a challenge to the arbitrator—and not this Court. This Court should therefore compel arbitration of Plaintiff's claims.

### I. The FAA Governs the Parties' Arbitration Agreement

Plaintiff Rada's agreement with E! Entertainment and Versant is governed by the FAA. Under the FAA, courts must compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also Daly v. Citigroup, Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (holding the FAA "leaves no place for the exercise of discretion by a district court," and instead mandates "arbitration on issues as to which an arbitration agreement has been signed"). The FAA governs the arbitration provision in the Terms for two reasons. *First*, the Terms plainly state that "this Arbitration Agreement . . . is governed by the Federal Arbitration Act." Arya Decl. Ex. A at 11. Courts regularly uphold parties' agreement to arbitrate under the FAA. *See* 9 U.S.C. § 2 (providing arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable"); *see*

*also, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (observing the FAA embodies the "liberal federal policy favoring arbitration" and is the "fundamental principle that arbitration is a matter of contract.").

*Second*, the FAA applies to any arbitration agreement that concerns a transaction "involving commerce." 9 U.S.C. § 2. This includes Defendants' agreement with Plaintiff Rada, which states that "this Arbitration Agreement is made pursuant to a transaction in interstate commerce." Arya Decl. Ex. A at 11. Courts also routinely apply the FAA to arbitration agreements governing internet-based interactions. *See, e.g.*, *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (finding the FAA governed "Lyft's Terms of Service . . . pertain[ing] to [contract for online] services"); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) (finding the FAA governed a contract involving internet interactions over property rentals).

## II. Plaintiff Assented to the Terms, Which Requires Plaintiff to Arbitrate at NAM

### A. Defendants Provided Reasonably Conspicuous Notice of the Terms and Arbitration Agreement

Plaintiff agreed to arbitrate her dispute with E! Entertainment and Versant. A contract to arbitrate is formed when the plaintiff has "[r]easonably conspicuous notice of the existence of contract terms" and makes an "unambiguous manifestation of assent to those terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (alteration in original). To be bound by contractual terms, a user need not receive actual notice—or explicitly say "I agree." *Edmundson v. Klarna, Inc.*, 85 F. 4th 695, 704 (2d Cir. 2023). Rather, the court evaluates the context of online contracts, including:

> (1) whether the interface clearly warned the user that taking a specific action would constitute assent to certain terms . . . ; (2) whether notice of the contractual terms was presented to the consumer in a location on the interface and at time when the consumer would expect to receive such terms . . . ; and (3) the course of dealing between the parties, including whether the contract terms were conspicuously

> presented to the consumer at each use of the offeror's service and the consumer's conduct in response to the repeated presentation of conspicuous terms.

*Id.* at 704-05 (internal citations and quotation marks omitted).

Applying these principles, courts regularly enforce online agreements like the Terms referenced in the Website's cookie banner. As to reasonably conspicuous notice, E! Entertainment provided conspicuous notice that continued use of its website constituted agreement to its hyperlinked Terms. As soon as she landed on the Website, Plaintiff Rada saw a cookie banner that advised Plaintiff Rada, "By continuing, you agree to our Terms [link to the Terms]. You also acknowledge that our updated Privacy Policy applies [link to the Privacy Policy], including your existing data." Arya Decl. ¶ 4. This is fully alleged in Plaintiff's Complaint. Compl. at 3 fig.1; *id.* at 23 fig.4. The cookie banner is located on the bottom half of the landing page, and it follows the user while she scrolls, navigates, and browses the website—until she selects "Continue" or chooses to update her data rights under "Your Privacy Choices." *Id.*

Notice of the Terms within the cookie banner is similar to prompts that courts in this Circuit have found to be reasonably conspicuous. For example, in *Fteja v. Facebook, Inc.*, the court concluded there was reasonably conspicuous notice where the link to the terms of service was "underlined, an indication that the phrase is a hyperlink." 841 F. Supp. 2d 829, 835. (S.D.N.Y. 2012). Similarly, in *Newman v. SL Green Realty Corporation*, the court found reasonably conspicuous notice where the page was "uncluttered," the hyperlink was "in red print, in sharp contrast to both the white background of the page and the black text of the rest of the paragraph." No. 24-CV-00335, 2025 WL 1797043, *6 (S.D.N.Y. June 26, 2025); *see also Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) (finding that "darker, bolder" font can also signal hyperlinks).

So too here. The text in E! Entertainment's cookie banner appears in readable black letters against a contrasting white background, and the link to the Terms of Service are underlined and bolded in blue text that is different in color from both the surrounding text and the banner background. The cookie banner is also uncluttered, and users need not navigate to any other screen or scroll to find the notice—ensuring that the language notifying them of the Terms is presented immediately upon entry to the site. And once someone clicked the hyperlink and was directed to Defendants' full Terms, those Terms disclosed the existence of the arbitration provision in the first paragraph in bold and all capital letters.

E! Entertainment's Website and banner stand in stark contrast to websites where courts found reasonably conspicuous notice lacking. For example, in *Nicosia v. Amazon.com, Inc.*, the court found reasonably conspicuous notice lacking where "there appear to be between fifteen and twenty-five links on the Order Page, and various text is displayed in at least four font sizes and six colors (blue, yellow, green, red, orange, and black), alongside multiple buttons and promotional advertisements." 834 F.3d 220, 237 (2d Cir. 2016). Similarly in *Specht v. Netscape Communications Corporation*, the court found no reasonably conspicuous notice where users had to scroll down a webpage to a "submerged" screen located below the download button. 306 F.3d 17, 32 (2d Cir. 2002). Those examples are nothing like here.

### B. Plaintiff Manifested Assent to the Terms and Arbitration Agreement

Courts in this Circuit also regularly find manifestation of assent in situations like this one. *Fteja* is instructive. There, the court found manifestation of assent where Facebook's Terms of Use were "somewhat like a browsewrap agreement in that the terms are only visible via hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else . . . to assent to the hyperlinked terms." *Fteja*, 841 F. Supp. 2d at 838. The court noted, for example, that even

a disclosure stating "[b]y picking up this apple, you consent to the terms of sales by this fruit stand" would fully establish assent. *Id.* at 839. Numerous courts have found manifestation of assent under similar circumstances. The court in *Nicholas v. Wayfair Inc.*, for example, concluded that the plaintiff manifested valid assent by clicking the button located directly above a notice that read "[b]y placing this order, you are agreeing to our terms and conditions." 410 F. Supp. 3d 448, 453 (E.D.N.Y. 2019). The court emphasized that "[t]he placement of the terms and conditions" supported the conclusion that the plaintiff manifested her assent. *Id.* at 454. Similarly, the court in *Bernardino v. Barnes & Noble Booksellers, Inc.* held that the plaintiff manifested assent by clicking the button located above "a clear prompt to users to read the TOU [Terms of Use] before" proceeding. No. 17-cv-4570, 2017 WL 7309893, at *5 (S.D.N.Y. Nov. 20, 2017) (alteration in original), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018); *see also Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (reasoning that "[r]egardless of whether he actually read the contract's terms, [the plaintiff] was directed exactly where to click in order to review those terms, and his decision to click" the relevant button to proceed represents his assent to the terms); *Plazza*, 289 F. Supp. 3d at 552 (applying California law and noting that a hybrid agreement "weighs in favor of valid notice").

The same reasoning controls here. Upon visiting E! Entertainment's Website, the Plaintiff was presented with a persistent, clear, and conspicuous notification that continued use of the Website constitutes agreement to the Terms. As she alleges, Plaintiff affirmatively interacted with the banner presenting that notice by "click[ing]" the privacy settings tool, "toggl[ing]" the settings, and confirming her choice—demonstrating her awareness of the notice. Compl. ¶ 5. After that, Plaintiff further alleges that she browsed, interacted with, and navigated the Website—i.e., she continued. *Id.* By continuing to browse and engage with www.eonline.com after reading and

interacting with the cookie banner, Plaintiff plainly manifested assent to Versant's Terms, and the arbitration clause and class action waiver set forth in the Terms.

## III. The Arbitrator Must Resolve Any Challenges to the Scope and Enforceability of the Arbitration Agreement

Because the parties expressly delegated all issues of arbitrability to the arbitrator, any issues Plaintiff may raise about the validity or scope of the parties' agreement must be decided by the arbitrator. The Supreme Court has held that where "the parties' contract delegates the arbitrability question to an arbitrator," "a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). As the Court explained, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). So long as parties "clearly and unmistakably" delegate the question of arbitrability to the arbitrator, the arbitrator—not the court—must decide threshold issues. *Levy v. Credit Plus, Inc.*, No. 21-CV-5541, 2023 WL 2644352, at *9 (S.D.N.Y. Mar. 27, 2023) (enforcing delegation clause and granting motion to compel arbitration); *Arshad v. Transp. Sys., Inc.*, 183 F. Supp. 3d 442, 447 (S.D.N.Y. 2016) (similar).

Here, the parties' delegation provision reveals a clear intent to have the arbitrator decide the scope or applicability of the arbitration provision. The Terms of Service to which Plaintiff Rada agreed provide that: "You and Versant further agree that arbitrable Disputes include but are not limited to issues arising out of or relating to the interpretation, applicability, enforceability, formation, or performance of this Arbitration Agreement, including, but not limited to, any claim that all or any part of these terms are void or voidable, [or] whether a claim is subject to arbitration." Arya Decl. Ex. A at 12. Courts regularly find similar language delegates questions of arbitrability to the arbitrator. *See, e.g.*, *Hidalgo v. Amateur Athletic Union of U.S., Inc.*, 468 F.

Supp. 3d 646, 652 (S.D.N.Y. 2020) (delegating "**ANY AND ALL QUESTIONS OF ARBITRABILITY, IF ANY**"); *Porcelli v. JetSmarter, Inc.*, No. 19 Civ. 2537, 2019 WL 2371896, at *4 (S.D.N.Y. June 5, 2019) (holding parties delegated arbitrability to arbitrator where delegation clause required that "'any' dispute be resolved through arbitration").

The arbitration provision also expressly incorporates the arbitration provider's rules, which separately and additionally delegate questions of arbitrability to the arbitrator. The Second Circuit instructs that when the parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Here, E! Entertainment's arbitration clause states arbitration will be conducted "in accordance with the NAM 'Comprehensive Dispute Resolution Rules and Procedures,' 'Fees For Disputes When One of the Parties is a Consumer,' and the 'Mass Filing Supplemental Dispute Resolution Rules and Procedures' in effect at the time any demand for arbitration is filed with NAM." Arya Decl. Ex. A at 13 (linking to the applicable NAM rules). The publicly available NAM rules state that threshold debates about arbitrability are to be submitted to the arbitrator. *See* NAM Comprehensive Dispute Resolution Rules and Procedures Rule 17(B), https://www.namadr.com/content/uploads/2025/12/Comprehensive-Rules-as-of-12.16.25.pdf (last visited Feb. 9, 2026). This express incorporation of the NAM rules in the Terms is additional clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability. *See, e.g.*, *Picha v. Gemini Tr. Co., LLC*, No. 22 CIV. 10922, 2024 WL 967182, at *13 n.20 (S.D.N.Y. Mar. 5, 2024) (finding that the "NAM procedures incorporated" into the agreement "grant the arbitrator the power to rule on the arbitrability of the issues presented"); *Peni v. Daily Harvest, Inc.*, No. 22CV5443, 2022 WL 16849451, at *6 (S.D.N.Y. Nov. 10, 2022)

("[I]ncorporation of [the JAMS] rules . . . constitute clear and unmistakable evidence that the parties agreed to delegate the arbitrability question."); *Henry Schein, Inc.*, 586 U.S. at 66 (incorporating American Arbitration Association rules, which similarly provide that arbitrators have the power to resolve arbitrability questions). Accordingly, any question of arbitrability is reserved for the arbitrator to decide rather than this Court.

## IV. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

Whether Plaintiff Rada's claims fall within the scope of the parties' arbitration agreement is a question for the arbitrator, and not the Court, to decide because the parties specifically delegated that question to the arbitrator. But even if the Court chooses to weigh in on this issue, it is clear that the arbitration provision covers Plaintiff Rada's claims. The FAA requires courts to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Courts in the Second Circuit recognize that broadly worded arbitration clauses carry a presumption of arbitrability. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). Put simply, "[d]oubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960). For example, where the parties agreed to arbitrate "all disputes arising out of or in relation to" a trading agreement, the Second Circuit compelled arbitration of a dispute over a separate agreement because that agreement "stemmed" from the trading agreement. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250-52 (2d Cir. 1991); *see also Camilo*, 384 F. Supp. 3d at 440 (broadly construing "ALL DISPUTES AND CLAIMS BETWEEN US"); *Feld*, 442 F. Supp. 3d at 833 (broadly scoping in all claims "**arising out of or relating to these Terms or . . . use of the PLATFORM**").

Here, the parties' arbitration agreement covers Plaintiff Rada's claims. Plaintiff Rada agreed that the "Arbitration Agreement is intended to be interpreted broadly and it applies to *all* Disputes between you and Versant, including but not limited to (1) claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement, or any prior agreement; and (2) claims that may arise after the termination of this Arbitration Agreement." Arya Decl. Ex. A at 12 (emphasis added). Plaintiff Rada alleges that E! Entertainment and Versant improperly tracked her browsing and search activity on www.eonline.com despite her privacy selections, and thereby violated certain statutes. These claims directly arise out of Plaintiff Rada's use of E! Entertainment's website and her relationship with E! Entertainment. That falls within the definition of a "Dispute" because Plaintiff's use of the Website was use of a "Versant Service[],"which includes all websites made available by Versant Media, and its affiliated companies, which includes E! Entertainment. Accordingly, Plaintiff's claims fall squarely within the heart of the Terms' arbitration agreement.

**V. Upon Compelling Arbitration, the Court Should Dismiss the Case**

The Court should dismiss this case if and when it grants this Motion to Compel Arbitration. Dismissal, as opposed to a stay, is "appropriate" where "all of the issues raised in the Complaint" are arbitrable. *Ramasamy v. Essar Glob. Ltd.*, 825 F. Supp. 2d 466, 471 (S.D.N.Y. 2011); *see also Lewis v. ANSYS, Inc.*, No. 19-CV-10427, 2021 WL 1199072, at *3 (S.D.N.Y. Mar. 30, 2021) (observing the court has discretion to stay or dismiss the case pending arbitration). As explained above, all of Plaintiff's claims are subject to arbitration. The Court should therefore dismiss the Complaint. *See, e.g.*, *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304-05 (S.D.N.Y. 2010) ("Because the Court has determined that all of Arrigo's claims must be submitted to arbitration, the Court dismisses this action without prejudice."), *aff'd*, 408 F. App'x 480 (2d Cir.

2011); *Patterson v. Raymours Furniture Co*., 96 F. Supp. 3d 71, 81 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016), *as corrected* (Sept. 7, 2016), *as corrected* (Sept. 14, 2016) ("Because all claims are arbitrable, the case is dismissed."); *Cadia Cap. Advisors LLC v. Fagu LLC*, No. 22 Civ. 5847, 2022 WL 4538347, at *5 (S.D.N.Y. Sept. 28, 2022) (dismissing complaint, pending outcome of arbitration).

## CONCLUSION

For the reasons explained above, E! Entertainment and Versant Media respectfully request that the Court order the Plaintiff to arbitrate her claims against the Defendants on an individual basis pursuant to the parties' arbitration agreement and dismiss the Complaint.

Dated: February 26, 2026

Respectfully submitted,

By: */s/ Jeffrey Landis*

Jeffrey Landis
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5203
Facsimile: (202) 706-5298
jeff@zwillgen.com

Sheri Pan
ZWILLGEN LAW LLC
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
sheri@zwillgen.com

*Counsel for Defendants Versant Media, LLC and E! Entertainment Television, LLC*

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT**

This document complies with the word-count limitation of Local Rule 7.1(c) because, excluding the parts of the document that are exempted, this document contains 4,704 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

*/s/ Jeffrey Landis*
*Jeffrey Landis*