UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLA RADA, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>VERSANT MEDIA, LLC and E! ENTERTAINMENT TELEVISION, LLC<br><br>Defendants. | **Case No.: 1:25-cv-10679-ALC**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS VERSANT MEDIA, LLC AND E! ENTERTAINMENT TELEVISION, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

Dated: March 12, 2026

Mark S. Reich (MR-4166)
Gary Ishimoto *
Christopher V. DeVivo (5969787)
Michael N. Pollack (6173272)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: gishimoto@zlk.com
Email: cdevivo@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiff*

**pro hac vice* forthcoming

# TABLE OF CONTENTS


INTRODUCTION ........................................................ 1

FACTUAL BACKGROUND ........................................................ 2

LEGAL STANDARD ........................................................ 4

ARGUMENT ........................................................ 5

A. It Is Proper for This Court to Determine the Validity of Any Purported Arbitration Agreement Between Plaintiff and Defendants ........................................................ 5

B. Defendants Fail to Meet Their Burden to Establish Assent ........................................................ 6

C. Plaintiff Did Not Assent to Defendants' TOS and Arbitration Provision ........................................................ 7

D. The Issue of Assent Cannot Be Decided Absent the Development of a Factual Record .... 11

CONCLUSION ........................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Barrows v. Brinker Rest. Corp.*,
36 F.4th 45 (2d Cir. 2022) .......... 11, 12

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 7, 8

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17-CV-04570 (LAK) (KHP), 2017 WL 7309893 (S.D.N.Y. 2017) .......... 11

*Brooks v. WarnerMedia Direct, LLC,*
No. 23 Civ. 11030 (KPF), 2024 WL 3330305 (S.D.N.Y. 2024) .......... 11

*Camilo v. Lyft, Inc.,*
384 F. Supp. 3d 435 (S.D.N.Y. 2019) .......... 5

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 7, 10

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) .......... 9

F*teja v. Facebook, Inc.,*
841 F. Supp. 2d 829 (S.D.N.Y. 2012) .......... 10

*Kum Tat Ltd. v. Linden Ox Pasture*, *LLC*,
845 F.3d 979 (9th Cir. 2017) .......... 5

*Linders v. Festival Fun Parks, LLC,*
No. 3:25-CV-659 (SVN), 2026 WL 636669 (D. Conn. 2026) .......... 8

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017) .......... 10

*Nicholas v. Wayfair Inc.,*
410 F. Supp. 3d 448 (E.D.N.Y. 2019) .......... 11

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .......... 4, 7, 9

*Oberstein v. Live Nation Entertainment, Inc*.,
60 F.4th 505 (9th Cir. 2023) .......... 9

*Plazza v. Airbnb, Inc.,*
289 F. Supp. 3d 537 (S.D.N.Y. 2018) .......... 5

*Presson v. Alamo Intermediate II Holdings, LLC*,
No. 24-cv-170 (ER), 2025 WL 692123 (S.D.N.Y. Mar. 4, 2025) ........................................... 8

*Rodriguez v. Festival Fun Parks*, *LLC*,
763 F.Supp.3d 336 (E.D.N.Y., 2025) ................................................................... 4, 6, 8

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1 (2021)........................................................ 7, 9, 10

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
263 F.3d 26 (2d Cir. 2001)................................................................................... 11

*Starke v. Gilt Groupe, Inc.*,
No. 13 Civ. 5497(LLS), 2014 WL 1652225 (S.D.N.Y. 2014) ............................................... 11

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)............................................................................ 4, 5, 7

*Starkey v. G Adventures, Inc.*,
796 F.3d 193 (2d Cir. 2015)................................................................................... 9

*Vincent v. National Debt Relief LLC*,
No. 24-cv-440 (LJL), 2024 WL 3344227 (S.D.N.Y. 2024) ............................................. 5, 7, 9

*Zachman v. Hudson Valley Federal Credit Union*,
49 F.4th 95 (2d Cir. 2022) ................................................................................... 6

**Statutes**

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* ........................................................ 1, 4

Plaintiff Alla Rada ("Plaintiff") opposes Defendants Versant Media, LLC and E! Entertainment Television, LLC's (together "Defendants" or "Versant") Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (the "Motion") (ECF No. 16).

## INTRODUCTION

Defendants characterize this Motion as an "open and shut" case for arbitration. It is not. The Motion rests on the premise that Plaintiff agreed to Versant's Terms of Service ("TOS"), including the arbitration provision contained therein, simply by visiting the E! Online website (the "Website") and engaging with the Website's cookie banner (the "Cookie Banner"). The record shows otherwise.

The Website's Cookie Banner is designed in a way that does not clearly obtain consent to the Website's TOS before users engage with the Website. Specifically, the design introduces ambiguity regarding how users express agreement to the TOS. For example, one of the two primary button options in the Cookie Banner, the "Your Privacy Choices" button ("Privacy Button"), opens a privacy pop-up that users can simply dismiss, allowing them to exit the Cookie Banner, and proceed to browse the Website. This design flow is significant: under its current structure, Plaintiff was able to access and use the Website without taking any action that would objectively demonstrate her unambiguous manifestation assent to the TOS.

Given the existence of this alternative path, one that does not require a clear and unambiguous manifestation of assent, Defendants were required, to meet their burden, to produce evidence establishing actual assent, such as timestamped clickstream data, backend audit logs, or other contemporaneous system records reflecting an affirmative act of agreement by Plaintiff. Defendants, however, produce no such documentation.

Instead, Defendants rely solely on a Versant employee's declaration describing the Cookie Banner's language and offer no documentary evidence illustrating that Plaintiff clicked or interacted with any hyperlinked TOS. A standalone copy of the TOS, untethered to proof of acceptance, does not establish assent.

Furthermore, the temporal placement of the Cookie Banner would not lead a reasonable user to understand that they were agreeing to contractual terms. The Cookie Banner appeared immediately upon accessing the Website, before Plaintiff took any action that would create a relationship with the Website governed by the TOS. Because no ongoing relationship had yet been formed, or was about to be formed, with Defendant, Plaintiff would not understand that merely interacting with the Cookie Banner constituted agreement to contractual terms.[1]

Because arbitration is a matter of consent, not presumption, a party cannot be compelled to arbitrate absent a clear and unambiguous manifestation of assent. The Motion should therefore be denied.

## <u>FACTUAL BACKGROUND</u>

Plaintiff alleges that she visited the Website to browse news, entertainment articles, and related digital content. Compl. ¶ 5.

According to the declaration of Sameer Arya (the "Sameer Decl."), a Senior Manager of Technology Strategy employed by Versant, users who accessed any page of the Website, starting

[1] A key allegation in the Complaint is that the language and assurances in the Cookie Banner are deceptive and illusory because Plaintiff's and users' data is transmitted to third parties (1) before users have an opportunity to interact with the Cookie Banner, and (2) even after users affirmatively toggle off the sale or sharing of personal information and reject all non-required cookies. Compl. ¶ 3. Accordingly, the disclosure mechanism Defendants claim binds Plaintiff lies at the very core of the claims asserted against Defendants.

from October 29, 2025, are immediately presented with the Cookie Banner. Sameer Decl. at 1. The Cookie Banner states:

> This site is now part of Versant. By continuing, you agree to our Terms. You also acknowledge that our updated Privacy Policy applies, including your existing data. For info on your data rights, click "Your Privacy Choices" or see "Your Rights" in our Privacy Policy.
>
> We and our partners also use tools on this site to provide the services, personalize your experience, and for analytics, marketing, and advertising. If you previously opted out of selling, sharing, or targeted advertising on this site, you will need to update your Privacy Choice.

Sameer Decl. at 1-2.

When presented with the Cookie Banner, users have two options: click the "Continue" button (Continue Button) or select "Your Privacy Choices" (Privacy Button). Sameer Decl. at 1. If a user clicks the Privacy Button, they are directed to a separate privacy-pop-up-screen where they may manage opt-out preferences through various toggles. Sameer Decl. at 2. The TOS are neither presented nor hyperlinked on that screen.

Upon closing the privacy-pop-up-screen, users may immediately browse and interact with the Website without clicking the Continue Button or taking any further action. *Id.* ("After they manage those choices [in the privacy-pop-up-screen via the Privacy Button], they can select "Confirm My Choice" and then continue to the Website.").

Plaintiff alleges that when she encountered the Website's Cookie Banner, she clicked the Privacy Button. Compl. ¶¶ 5, 15. Plaintiff then toggled off the sale and sharing of personal information and clicked "Confirm My Choice." Compl. ¶¶ 5, 15.

The arbitration provision is contained within the TOS, which are accessible only through the hyperlinked "Terms" text embedded in the Cookie Banner and via a footer link at the bottom of the Website's pages. *See* Sameer Decl., Ex. A.

The Sameer Decl. is silent as to whether users who proceed through the Privacy Button pathway, like Plaintiff, are ever presented with the TOS, required to click the Continue Button, or required to click on the TOS hyperlink.

## LEGAL STANDARD

The FAA "does not require parties to arbitrate when they have not agreed to do so." *Rodriguez v. Festival Fun Parks*, *LLC*, 763 F.Supp.3d 336, 348 (E.D.N.Y., 2025) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Thus, courts must still decide whether the parties to a contract have agreed to arbitrate disputes. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). The party seeking to compel arbitration bears the initial burden of demonstrating that an agreement to arbitrate was made. *Rodriguez*, 763 F.Supp.3d at 348.

When determining whether a valid agreement to arbitrate exists, courts apply ordinary state-law principles of contract formation. *Starke*, 913 F.3d at 288; *see also Nicosia*, 834 F.3d at 231 (same). Accordingly, an arbitration agreement may be invalidated by generally applicable contract defenses. 9 U.S.C. § 2.

To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, an enforceable contract will be found based on an inquiry notice theory only if: (1) a reasonably prudent person would be on inquiry notice of the terms and (2) the user unambiguously manifests assent through conduct that a reasonable person would understand to constitute assent. *Rodriguez*, 763 F.Supp.3d at 349.

## ARGUMENT

Plaintiff did not assent to Versant's purported TOS, and Defendants have failed to provide sufficient evidence to meet their burden of proving otherwise. As such, the fundamental issue of whether a valid contract was formed remains for this Court to resolve. This question should be addressed before any determination is made regarding the need for arbitration.[2]

### A. It Is Proper for This Court to Determine the Validity of Any Purported Arbitration Agreement Between Plaintiff and Defendants

Although challenges to the validity of a contract containing an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court. *Starke*, 913 F.3d at 288; *see also Vincent v. National Debt Relief LLC*, No. 24-cv-440 (LJL), 2024 WL 3344227, at *5 (S.D.N.Y. 2024) (same). "The FAA is not a substitute for contractual assent." *Vincent*, 2024 WL 3344227, at *5.

Here, Plaintiff argues that she did not consent to the TOS and therefore no contract was formed. This is not a challenge to the validity of an existing agreement; it is a challenge to "the very existence of the contract." *Kum Tat Ltd. v. Linden Ox Pasture*, *LLC*, 845 F.3d 979, 983 (9th Cir. 2017). Accordingly, the issue must be decided by this Court, not delegated to an arbitrator.

Even the authorities cited in Defendants' Motion confirm as much. *See* Motion at 9 (citing *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 547 (S.D.N.Y. 2018)) ("If there exists a genuine issue of material fact as to whether the parties entered the agreement, a trial is warranted.")); *see also id.* (citing *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (applying the FAA only after finding a manifestation of assent where the plaintiff clicked "I ACCEPT" to continue using

[2] Plaintiff does not challenge whether she had reasonably conspicuous notice of the hyperlinked TOS, nor does Plaintiff argue that the arbitration agreement, if binding upon a finding of assent, encompasses her claims.

the platform)). Because the existence of any agreement to arbitrate is squarely disputed, this Court need not compel arbitration.

**B. Defendants Fail to Meet Their Burden to Establish Assent**

The standard governing a motion to compel arbitration mirrors that applied on summary judgment, requiring the Court to view the evidence and draw all reasonable inferences in favor of the non-movant. *See Zachman v. Hudson Valley Federal Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022); *see also Rodriguez*, 763 F. Supp. 3d at 348 (applying the same standard). Accordingly, Defendants must do more than rely on conclusory assertions to carry their burden on this Motion.

Here, Defendants' sole proof of assent is the Sameer Decl., which merely recites the purported language of the website's Cookie Banner and provides what appears to be a single image of that banner bearing no date or timestamp. *See* Sameer Decl.[3] The image does not demonstrate that Plaintiff encountered that interface during her visit, nor does it demonstrate that users were required to interact with the hyperlinked TOS in order to interact with the Website. *See Zachman*, 49 F.4th at 104 (finding where "the record does not contain screenshots of the webpage(s)" and instead just provides a copy of the agreement, the court cannot engage in an inquiry notice analysis).

Because the Cookie Banner provides an alternative path that does not require clicking the Continue Button, namely, the option to click the Privacy Button rather than the Continue Button, and given the nature of Plaintiff's interaction with Defendants' website as a mere browser rather than a subscriber or purchaser, there is no basis to infer that Plaintiff had reason to expect that

[3] The Sameer Decl. merely states that "[a]t the request of counsel, I reviewed business records relating to the cookie banner and Terms of Service on the Website, starting in late 2025 and continuing to today" and "[f]rom this review, I understand that starting on October 29, 2025 and continuing today, when users first access any page on the Website, they are immediately met with the cookie banner shown here." Sameer Decl. at 1.

simply visiting the site would bind her to Defendants' TOS. In light of these circumstances, Defendants must produce evidence demonstrating that Plaintiff actually took the action that purportedly signifies agreement, such as clickstream data, system logs, audit trails, or other contemporaneous records reflecting that Plaintiff clicked the Continue Button or otherwise manifested assent to the TOS. However, no such evidence has been presented. Consequently, Defendants cannot meet their burden of proving that a valid agreement to arbitrate was formed. *See Vincent*, 2024 WL 3344227, at *9 ("The mere act of entering the [w]ebsite here cannot constitute unambiguous assent to a contract comprised of the [t]erms of [s]ervice").

**C. Plaintiff Did Not Assent to Defendants' TOS and Arbitration Provision**

Whether a reasonably prudent user would be on inquiry notice of contractual terms depends on the "design and content of the relevant interface." *Nicosia,* 834 F.3d at 233. Courts will not enforce online terms where they are not "reasonably conspicuous" and the user does not "unambiguously manifest assent." *Starke,* 913 F.3d at 289–90.

Here, Plaintiff took no action that could reasonably be construed as manifesting assent to the TOS (and to the arbitration provision contained therein). *See Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (there is no manifestation of assent unless "a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms"); *see also Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471, 289 Cal. Rptr. 3d 1, 21 (2021) (in discussing sign-in-wrap agreements: "it is not apparent that the consumer is aware that they are agreeing to contractual terms simply by clicking some other button."). Courts routinely decline to find assent where websites present multiple buttons or misleading language without clearly indicating which action constitutes assent. *See Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1159 (9th Cir. 2025) (finding no manifestation of assent where "a

user may reasonably be left with the impression that to [click a button reading] 'Redeem' means to 'Redeem a gift card,' rather than purchase a membership, much less manifest her assent to additional terms."); *Berman,* 30 F.4th at 858 (finding no manifestation of assent where button presented to plaintiffs gave no indication that it would bind plaintiffs to a set of terms and conditions); *Rodriguez,* 763 F.Supp.3d at 355 ("the 'Terms&Conditions' hyperlink did not contain any text or visual signal that 'clearly warne' [plaintiff] that clicking the'Continu' button and proceeding with her ticket purchase 'would constitute assent' to the [t]erms"); *Linders v. Festival Fun Parks, LLC,* No. 3:25-CV-659 (SVN), 2026 WL 636669, at *11 (D. Conn. 2026) (similar).

Defendants' Cookie Banner is rife with ambiguity and confusion. It does not clearly indicate to Plaintiff and Website users what action would constitute assent to the TOS, presenting two ill-defined options: the Continue Button and the Privacy Button. *See* Sameer Decl. at 1. Indeed, the design and language of the Cookie Banner indicated, if at all, that users would agree to the TOS only by clicking the Continue Button. Specifically, the language found in the Cookie Banner stated, "[b]y continuing, you agree to our [TOS]," and placed that language immediately adjacent to a button labeled "Continue." *Id.* In this context, a reasonable user could assume that clicking the Continue Button was the action required to manifest assent to the TOS. Conversely, the absence of any action or failure to click the "Continue" button would reasonably be understood as non-assent. *See Presson v. Alamo Intermediate II Holdings, LLC*, No. 24-cv-170 (ER), 2025 WL 692123 at *5 (S.D.N.Y. Mar. 4, 2025) (finding that when a website informed consumers that checking 'Join Alamo Victory' would bind them to the terms, clicking another button, such as 'Buy Tickets' did not bind them to the terms); *see also Linders* 2026 WL 636669, at *11 ("While it is true that a company need not explicitly advise the user that the act of clicking a button will constitute assent to terms, the interface must still 'make clear' to the reasonable internet user that

a specific 'click' signifies assent.") (citing *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 708 (2d Cir. 2023).

Defendants could have eliminated any ambiguity regarding assent to the TOS by clearly stating, "By continuing to use the Website, you agree to our TOS," such that clicking either the Continue Button ***or*** the Privacy Button would unmistakably communicate consent. *See, e.g., Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (finding agreement where users were expressly told that "***By continuing past this page and clicking*** 'Place Order,' you agree to our Terms of Use") (emphasis added).

Alternatively, Defendant, a sophisticated media entity with an extensive online presence, could have utilized a pure clickwrap agreement requiring Plaintiff to click "Agree" to the TOS. *See, e.g.*, *Nicosia*, 834 F.3d at 237–38 (noting that "Amazon chose not to employ a clickwrap mechanism," which is "certainly the easiest method of ensuring that terms are agreed to"); *see also Starkey v. G Adventures, Inc.,* 796 F.3d 193, at 197 n.3 (2d Cir. 2015) (noting that it would have been "simpler to resolve" this question had a clickwrap mechanism been used). Instead, the Cookie Banner's design allowed users to interact with it without clicking "Continue," and therefore without purportedly agreeing to the TOS, by selecting the Privacy Button instead. That is precisely what Plaintiff did. Compl. ¶ 5.

Furthermore, the context of the relationship between Plaintiff and the Website weighs against a finding of assent. Plaintiff, a mere browser, would not reasonably expect to enter into a contractual relationship with Defendants simply by visiting the Website, nor would Plaintiff expect to be bound by a TOS without clicking the Continue Button. *See Sellers,* 73 Cal. App. 5th at 476 ("it is questionable whether a consumer buying a single pair of socks, or signing up for a free trial, would expect to be bound by contractual terms"); *see also Vincent*, 2024 WL 3344227, at *14

("the Website is not of the sort that would suggest to the user that the content is being offered pursuant to terms"). Even in *Chabolla*, where the court still declined to find assent despite the plaintiff proceeding through a multi-step registration process to a subscription-related service, the Court was neutral as to whether the "context of the transaction" would cause Plaintiff to be on notice of any terms. 129 F.4th at 1156.[4]

Here, Plaintiff was not creating an account, making a purchase, signing up for a free trial, or otherwise attempting to establish an ongoing relationship with the Website. In this context, it was reasonable for Plaintiff ***not*** to assume that merely accessing the Website constituted agreement to any TOS or arbitration provision absent an affirmative manifestation of assent. *See* and *cf. Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 80 (2d Cir. 2017) (finding assent where users entered into a forward-looking relationship with Uber that required agreement to terms governing that relationship). Indeed, "[t]he majority of the federal cases finding an enforceable sign-in wrap agreement involve continuing, forward-looking relationships." *Sellers*, 73 Cal. App. 5th at 476.

The cases on which Defendants rely to argue that Plaintiff assented to the TOS do not conform to the facts here. These cases mainly involve interfaces presenting a single, required action, most often at the point of purchase or account registration, that users ***had*** to take in order to proceed or make a purchase. Courts found assent in those circumstances because the user's forward progress was expressly conditioned on taking that action, and the interface ***clearly*** communicated that doing so constituted agreement to the applicable terms. *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (noting that, to obtain an account, the plaintiff

[4] While the "context of the transaction" analysis in *Chabolla* concerned whether the website provided reasonably conspicuous notice of its terms, that analysis is also relevant to whether Plaintiff, a mere browser, having clicked the Privacy Button, would reasonably have been cognizant of, or on the lookout for, an additional mechanism by which to manifest assent to Versant's TOS.

"must have clicked" a button explicitly stating that doing so indicated agreement to the Terms of Service); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 453 (E.D.N.Y. 2019) (plaintiff clicked "Submit Order," directly beneath text stating that placing the order constituted agreement to the terms and conditions); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 7309893, at *11 (S.D.N.Y. 2017) (plaintiff actually placed an order, thereby "taking the very action linked with assenting to the TOU"); *see also Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497(LLS), 2014 WL 1652225, at *3 (S.D.N.Y. 2014) (user informed that by clicking "Shop Now" and providing an email address, he agreed to the [t]erms of [m]embership).

Accordingly, the availability of an "alternative path" of non-assent and the context of the relationship between Plaintiff and Defendants distinguish this case from the authorities cited in Defendants' Motion.

**D. The Issue of Assent Cannot Be Decided Absent the Development of a Factual Record**

Where, as here, factual disputes regarding whether Plaintiff assented to the TOS, courts routinely deny motions to compel arbitration and permit the factual record to be further developed. *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.,* 263 F.3d 26, 30–31 (2d Cir. 2001) (holding that where a party presents some evidence placing formation of the arbitration agreement in issue, the district court must resolve that issue before compelling arbitration); *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 49–52 (2d Cir. 2022) (vacating order compelling arbitration where the plaintiff submitted evidence disputing assent to the arbitration agreement and reiterating that disputed issues of contract formation must be resolved before arbitration may be compelled); *Brooks v. WarnerMedia Direct, LLC,* No. 23 Civ. 11030 (KPF), 2024 WL 3330305, at *15 (S.D.N.Y. 2024) (allowing discovery because the issue of assent to terms of service was "dependent upon whether [plaintiff] clicked the "Start Streaming" button after encountering the "Start Streaming" Notice

during her June 2023 visit to the HBO Max platform"). Indeed, the Second Circuit has emphasized that a motion to compel arbitration is evaluated under a standard similar to summary judgment, and that the party seeking arbitration bears the burden of demonstrating that an agreement to arbitrate was actually formed. *See Barrows,* 36 F.4th at 51–52.

Given the elevated summary judgment standard applicable to this Motion, Defendants' failure to produce any documentary evidence or electronic records demonstrating Plaintiff's assent, and the ambiguities surrounding what, if anything, proceeding to browse the Website after selecting the Privacy Button signifies, Plaintiff is entitled to at least limited discovery on the issue of contract formation before the Court can determine whether any agreement to arbitrate was formed.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety and permit this action to proceed as a class action on merits.

Dated: March 12, 2026

**LEVI & KORSINSKY, LLP**

By: *Mark S. Reich*
Mark S. Reich (MR-4166)
Christopher V. DeVivo (5969787)
Gary Ishimoto *
Michael N. Pollack (6173272)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cdevivo@zlk.com
Email: gishimoto@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiff*

**pro hac vice* forthcoming

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT**

This document complies with the word-count limitation of Local Rule 7.1(c) because, excluding the parts of the document that are exempted, this document contains 3,618 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

By: *Mark S. Reich*
Mark S. Reich