**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLA RADA, *on behalf of herself and all others similarly situated*,<br><br>*Plaintiff*,<br><br>VERSANT MEDIA, LLC and E! ENTERTAINMENT TELEVISION, LLC,<br><br>*Defendants*. | Case No. 25-cv-10679-ALC |

**DEFENDANTS VERSANT MEDIA AND E! ENTERTAINMENT'S**
**REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

INTRODUCTION ..........1

ARGUMENT ..........2

I. Plaintiff Concedes Defendants Provided Reasonably Conspicuous Notice and Her Claims Fall Within the Scope of the Arbitration Agreement ..........2

II. Plaintiff's Own Allegations Establish Assent to Defendants' Terms ..........3

A. Defendants' Cookie Banner Conditioned Assent on Continuing, Not Clicking a Specific Button ..........3

B. The Opposition's Alternative Path Argument Also Fails ..........7

C. No Further Evidence or Factual Record Is Needed to Find Assent ..........8

CONCLUSION ..........9

## INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Compel Arbitration (the "Opposition") concedes that Defendants provided reasonably conspicuous notice of E! Entertainment Television, LLC's website ("Website") Terms of Service ("Terms") containing an arbitration provision. The Opposition also concedes that such arbitration provision encompasses the claims Plaintiff asserts against Defendants in this action (although that would be an issue for the arbitrator to decide). Indeed, the only argument that the Opposition makes for why this Court should not compel this case to arbitration is that Plaintiff allegedly did not manifest her assent to Defendants' Terms. That is wrong. Defendants' website cookie banner told users that "By continuing," they agreed to Defendants' Terms. The Complaint's own allegations—that Plaintiff interacted with the banner, confirmed her privacy selections, and then browsed the Website—establish she "continued." Under settled case law, that is manifestation of assent.

To get around this inescapable conclusion, the Opposition puts forward a series of arguments that do not withstand scrutiny. For example, the Opposition tries to conjure ambiguity in the banner's language by suggesting that assent depends exclusively on clicking a particular button, even though the banner plainly defines assent as continuing use. Similarly, the Opposition posits that the "Your Privacy Choice" pop-up provides an "alternative path" for the user to exit the cookie banner and continue to the Website, without clicking continue or making privacy selections. That argument is not only factually incorrect but also legally irrelevant, because the Complaint concedes that Plaintiff confirmed her privacy selections before continuing to the Website. Finally, the Opposition argues that Defendants failed to produce "evidence" like clickstream data, systems logs, or audit trails showing Plaintiff took additional, affirmative acts

of agreement. But that argument is a red herring because Plaintiff's own allegations show she affirmatively agreed to the Terms—no additional data is necessary.

Because Plaintiff's own allegations establish assent, her claims are subject to Defendants' Terms. This Court should therefore compel this case to arbitration pursuant to the parties' agreement.

## ARGUMENT

### I. Plaintiff Concedes Defendants Provided Reasonably Conspicuous Notice and Her Claims Fall Within the Scope of the Arbitration Agreement

Defendants explained in their opening Memorandum of Law ("Memo") that in deciding if a claim is subject to arbitration, courts examine (1) whether the parties entered into a contract to arbitrate and (2) whether the claim falls within the scope of the agreement. *See* Memo at 7-8 (citing *Maldonado v. Nat'l Football League*, No. 1:22-CV-02289, 2023 WL 4580417, at *2 (S.D.N.Y. July 18, 2023) (Carter, J.)). A contract to arbitrate is formed when the plaintiff has "[r]easonably conspicuous notice of the existence of contract terms" and makes an "unambiguous manifestation of assent to those terms." Memo at 9 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). Here, the Opposition states that "Plaintiff does not challenge whether she had reasonably conspicuous notice of the hyperlinked TOS, nor does Plaintiff argue that the arbitration agreement, if binding upon a finding of assent, encompasses her claims." Opp'n at 5 n.2. Plaintiff thus concedes those issues. *See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022). As such, the only question for the Court is whether Plaintiff manifested assent to the Terms.

## II. Plaintiff's Own Allegations Establish Assent to Defendants' Terms

### A. Defendants' Cookie Banner Conditioned Assent on Continuing, Not Clicking a Specific Button

Plaintiff's own allegations confirm that she assented to Defendants' Terms. In the Second Circuit, website users manifest assent "through conduct that a reasonable person would understand to constitute assent." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (cleaned up). That is exactly what happened here. Immediately upon landing on E!'s Website, Plaintiff saw a banner advising her: "By continuing, you agree to our Terms [link to the Terms]. You also acknowledge that our updated Privacy Policy applies [link to the Privacy Policy], including your existing data. For info on your data rights, click "Your Privacy Choices" or see "Your Rights" [link to the Rights] in our Privacy Policy." Compl. at 3 fig.1; *id.* at 23 fig.4; *see also* Opp'n at 3; Decl. of Sameer Arya ¶ 4 ("Arya Decl."). In Plaintiff's own words, "when she encountered the Website's [c]ookie [b]anner, she clicked the Privacy Button," and then "toggled off the sale [and] sharing of personal information, and selected 'Confirm My Choice.'" Compl. ¶ 5; *see also* Opp'n at 3. Plaintiff alleges she then engaged in "browsing activity, page interactions, [and] navigation patterns." Compl. ¶ 5; *see also id.* ¶ 15 (alleging "after she chose to decline the marketing cookies," "[t]he Website continued to track Plaintiff['s] . . . browsing activity and device identifiers" as she "used the Website"); Opp'n at 2. She thus did exactly what the cookie banner told her constituted assent—continued.

To get around this, the Opposition tries to recast "the design and language of the Cookie Banner" as "indicat[ing] . . . that users would agree to the [Terms] only by clicking the [c]ontinue [b]utton." Opp'n at 8. But that is not what the banner says. Indeed, the plain language of the banner refutes that argument. It expressly states in the first line, "By continuing, you agree to our Terms." Arya Decl. ¶ 4; Compl. at 3 fig.1. Nothing in that sentence limits or

conditions assent to clicking on a particular button. Instead, it defines assent as any action that constitutes further use of the Website.

The rest of the banner reinforces this understanding. The "**Terms**" are bolded and hyperlinked, making them readily accessible, and the banner separately explains how users can learn more about their data rights through the "Your Privacy Choices" option. *Id.* The language readily explains that the "Your Privacy Choices" button relates to privacy settings. *See id.* The cookie banner language does not say (or even suggest) that clicking the "Continue" button is the exclusive means of assenting to the Terms. *See id.* If the Plaintiff did not wish to agree to the Terms, she could have easily declined to proceed and exited her browser. She could have navigated to another site. She could have closed her computer. Instead, by her own allegations, she repeatedly interacted with eonline.com—engaging in "browsing activity, page interactions, [and] navigation patterns" on the Website. *See, e.g.*, Compl. ¶ 5. In other words, she continued to the Website. This conduct demonstrates she agreed to the Terms under the banner's plain language.[1]

In light of Plaintiff's allegations in the Complaint, the Opposition's cases are readily distinguishable. *See* Opp'n at 7-8. The court in *Presson v. Alamo Intermediate II Holdings, LLC* found assent lacking because Plaintiff took no action: while the checkout page stated, "By checking 'Join Alamo Victory' you . . . agree to Alamo Drafthouse Cinema's terms of use," that

---

[1] Plaintiff additionally argues that the cookie banner is deceptive and illusory because the Website allegedly transmits data to third parties before users have an opportunity to interact with the banner. *See* Opp'n at 2, n.1. That argument, however, is irrelevant to whether Plaintiff manifested assent to arbitrate the claims in this case. Plaintiff agreed that the arbitration provision applies to "all Disputes between [Plaintiff] and Versant, including but not limited to . . . claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement, or any prior agreement." Arya Decl. Ex. A, at 12. Put another way, any "deceptive and illusory" argument is for the arbitrator to decide.

box was already pre-checked. No. 24-CV-170 (ER), 2025 WL 692123, at *1 (S.D.N.Y. Mar. 4, 2025). It followed that "[a]ccordingly, Presson did not take any 'specific action' that 'would constitute assent.'" *Id.* at *5. Here, Defendants required users to continue to the Website in order to manifest assent—exactly the action Plaintiff concedes she took.

The Opposition's other cases likewise found assent lacking for reasons that do not apply here. The notices in *Rodriguez v. Festival Fun Parks, LLC* and *Berman v. Freedom Financial Network, LLC* did not even contain call-to-action language. In *Rodriguez*, the payment screen simply displayed a link titled "Terms&Conditions"—with no accompanying language. 763 F. Supp. 3d 336, 353 (E.D.N.Y. 2025); *see also Linders v. Festival Fun Parks, LLC*, No. 3:25-CV-659 (SVN), 2026 WL 636669, at *8 (D. Conn. Mar. 6, 2026) (same, as to payment screen that merely listed a "Terms & Conditions" link, with no descriptive text). In *Berman*, the notice did not "explicitly notify" users what action would constitute assent, and the website simply stated, "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy." 30 F.4th 849, 854, 858 (9th Cir. 2022). And in *Chabolla v. ClassPass Inc.*, the court found no assent where the relevant notice appeared on a wholly different screen from where the user first interacted with the service. 129 F.4th 1147, 1157 (9th Cir. 2025) ("It is not apparent that a user agrees or commits to anything on screen 1 other than sharing her email address."). Finally, the notice in *Sellers v. JustAnswer LLC* was in "extremely small print" and "outside the user's primary area of focus"—"not in 'visual proximity to the request for consent.'" 73 Cal. App. 5th 444, 479, 481 (2021) (cleaned up). The court thus found such notice "not sufficiently conspicuous . . . to infer manifestation of assent." *Id.* at 482.

The circumstances at hand are nothing like those in the Opposition's cases. The cookie banner appears on the very first screen Plaintiff saw. The cookie banner contained call-to-action

language. The call-to-action language and Plaintiff's conduct that manifested assent match. The banner explicitly states that "[b]y continuing," a user agrees to the Terms. *See* Arya Decl. ¶ 4; Compl. at 3 fig.1. And Plaintiff concedes the cookie banner provided reasonably conspicuous notice. *See* Opp'n at 5 n.2.

This is sufficient according to courts in this Circuit, as discussed more fully in the Memo. *See* Memo at 11-12; *see also, e.g.*, *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 274, 293-96 (E.D.N.Y. 2024) (holding that the plaintiff unambiguously manifested assent based on a notice that, "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**"); *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (noting that a disclosure stating "[b]y picking up this apple, you consent to the terms of sales by this fruit stand" would establish assent); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK), 2017 WL 7309893, at *11 (S.D.N.Y. Nov. 20, 2017), *Report & Recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018), *appeal dismissed*, 763 F. App'x 101 (2d Cir. 2019) (finding assent where the plaintiff took "the very action linked with assenting" to the terms); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 453-54 (E.D.N.Y. 2019) (finding assent where the plaintiff clicked "submit order" button located above a notice that read "[b]y placing this order, you are agreeing to our terms and conditions").[2]

The Opposition attempts to distinguish Defendants' cases on the ground that they involved actions "that users ***had*** to take in order to proceed or make a purchase." Opp'n at 10 (emphasis in original). But nowhere does the Opposition explain how or why that distinction is

[2] Even Plaintiff's out-of-circuit authorities recognize assent where the interface clearly identifies the action that manifests agreement and the user takes that action. *See, e.g.*, *Berman*, 30 F.4th at 856 (holding that an enforceable agreement forms when "a user engages in conduct that manifests her acceptance of [a website's] terms").

relevant to whether Plaintiff manifested assent to the Terms. That is because it is not. The cookie banner advised that "by continuing," Plaintiff agreed to the Terms and she continued. That is assent.

In a last ditch effort to paint the cookie banner as ambiguous, the Opposition argues that rather than state "By continuing," the banner was required to specify, "By continuing to use the Website." Opp'n at 9. That is not the standard. The relevant inquiry is if Plaintiff undertook conduct that a reasonable person would understand to constitute assent, "not whether the Terms are enforceable or unconscionable because of a lack of clarity or internal inconsistencies." *Hu*, 779 F. Supp. 3d at 295 (citing *Edmundson*, 85 F.4th at 704). Here, there is no reasonable conclusion other than that by continuing to use the Website, Plaintiff agreed to the Terms. Plaintiff was on the site when she saw the cookie banner, after all; of course "by continuing" referred to the Website—there was nothing else it could refer to.

**B. The Opposition's Alternative Path Argument Also Fails**

Plaintiff's "alternative path" theory fares no better. The Opposition argues that the "Your Privacy Choices" button allows users to proceed on an "'alternative path' of non-assent" through which they could avoid agreeing to Defendants' Terms. *See* Opp'n at 1 ("[O]ne of the two primary button options in the Cookie Banner, the 'Your Privacy Choices' button . . . opens a privacy pop-up that users can simply dismiss, allowing them to exit the Cookie Banner, and proceed to browse the Website."). That argument is both factually wrong and legally irrelevant.

Plaintiff's "alternative path" argument is factually wrong because contrary to the Opposition's claim, a user cannot simply dismiss the "Your Privacy Choices" pop-up in order to avoid the cookie banner and proceed to browse the Website. The opposite is true: when an ordinary user selects and is presented with the "Your Privacy Choices" pop-up, she must select "Confirm My Choice" in order to dismiss the cookie banner. *See* Suppl. Decl. of Sameer Arya

("Suppl. Arya Decl.") ¶ 5. If she clicks the second and only other button, "X," she immediately returns to the cookie banner—where she again must either click "Continue" or "Your Privacy Choices." *See id.* ¶¶ 4-6. In other words, a user cannot dismiss the cookie banner without clicking either "Continue" on the cookie banner, or "Confirm My Choice" on the cookie settings pop-up. *See id.* ¶¶ 5-6. She must always take an action that "objectively demonstrate[s] her unambiguous manifestation assent to the [Terms]." Opp'n at 1.

Even if that were not the case, however, and a hypothetical user could continue to the Website without clicking "Continue" or "Confirm My Choice," that is irrelevant—because Plaintiff alleges (and thereby concedes) that she in fact clicked "Your Privacy Choices," affirmatively changed the privacy settings, and confirmed her selection before browsing eonline.com. *See* Compl. ¶ 5. Indeed, that is the entire premise of her Complaint. Plaintiff manifested assent to the Terms, and the Court should compel this matter to arbitration.

**C. No Further Evidence or Factual Record Is Needed to Find Assent**

No further evidence or factual record is needed for the Court to find assent. The Opposition argues that Defendants "must produce evidence demonstrating that Plaintiff actually took the action that purportedly signifies agreement" such as "clickstream data, system logs, audit trails, or other contemporaneous records reflecting that Plaintiff . . . manifested assent to the [Terms]." Opp'n at 7. It also argues that "Plaintiff is entitled to at least limited discovery on the issue of contract formation." *Id.* at 12. But again, these arguments ignore the Complaint's own allegations which establish such "assent to the [Terms]" and "contract formation." There is no factual dispute as to the actions Plaintiff took on the Website. Plaintiff expressly avers in the Complaint that she acted on the cookie banner and then continued to use the Website. Plaintiff has presented no evidence inconsistent with those allegations. Thus, there is no genuine factual

dispute that Plaintiff continued browsing the Website after proceeding through the banner—conduct that courts have found sufficiently manifests assent. *See supra* § II.A; Memo at 11-12.

Similarly, the Opposition argues that Defendants failed to provide a timestamped date for the cookie banner shown in the Arya Declaration. But this ignores the Declaration's statements that this has been the cookie banner since October 29, 2025—and Plaintiff's own allegations that this was the banner she encountered during her recent visit(s). Compl. at 3 fig.1; *id.* at 23 fig.4. In that regard, this case is nothing like the *Zachman v. Hudson Valley Federal Credit Union* case the Opposition points to, in which there was no record of the relevant webpages providing notice. 49 F.4th 95, 104 (2d Cir. 2022). That is beyond dispute here, because Plaintiff affirmatively alleges in the Complaint that she saw (and indeed includes an image of) the cookie banner discussed in the Arya Declaration that provided the notice. She then further alleges she clicked on that banner, affirmatively changed the privacy settings, confirmed her selection, and then browsed the Website. *See* Compl. ¶ 5. No more evidence is needed.

## CONCLUSION

For the reasons explained above, E! Entertainment and Versant Media respectfully request that the Court order Plaintiff to arbitrate her claims against Defendants on an individual basis pursuant to the parties' arbitration agreement and dismiss the Complaint.

Dated: March 19, 2026

Respectfully submitted,

By: */s/ Jeffrey Landis*

Jeffrey Landis
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5203
Facsimile: (202) 706-5298
jeff@zwillgen.com

Sheri Pan
ZWILLGEN LAW LLC
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
sheri@zwillgen.com

*Counsel for Defendants Versant Media, LLC and E! Entertainment Television, LLC*

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT

This document complies with the Court's Individual Practices section 2(B) as this reply brief does not exceed 10 pages, and the word-count limitation of Local Rule 7.1(c) because, excluding the parts of the document that are exempted, this document contains 2,816 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

*/s/ Jeffrey Landis*
Jeffrey Landis