**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**ALLA RADA, *on behalf of herself and all others similarly situated,***

***Plaintiff,***

**-against-**

**VERSANT MEDIA, LLC and E! Entertainment Television, LLC,**

***Defendants.***

**25-cv-10679 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Alla Rada, on behalf of herself and all others similarly situated, brings the instant action against Defendants Versant Media, LLC and E! Entertainment Television, LLC, alleging violations of the Federal Wiretap Act, 18 U.S.C. § 2150; the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 638; the California Consumer Legal Remedies Act, Cal. Civ. Code. §1770; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and other various torts. Pending before the Court is Defendant's Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. After considering the Parties' submissions and the relevant materials, the Court hereby **GRANTS** Defendants' motion.

## BACKGROUND

### I. Factual Background

Plaintiff Alla Rada ("Plaintiff") visited the www.eonline.com (the "Website"), owned by Versant Media, LLC ("Versant"), at least once in November 2024 to browse news, entertainment articles, and related digital content, and more recently for research purposes. *See* ECF No. 1 ¶¶ 2, 5 ("Complaint"). Versant is a publicly traded media company headquartered in New York, New York. Compl. ¶ 16. Versant owns and operates E! Entertainment Television, LLC ("E!

Entertainment"), which delivers pop culture news, celebrity updates, and award show coverage. *Id*. Starting on October 29, 2025, when users first access any page on the Website, they are immediately met with the cookie banner with hyperlinks to terms and privacy policies. ECF No. 17. The Cookie Banner states:

> This site is now part of Versant. By continuing, you agree to our Terms. You also acknowledge that our updated Privacy Policy applies, including your existing data. For info on your data rights, click "Your Privacy Choices" or see "Your Rights" in our Privacy Policy.
>
> We and our partners also use tools on this site to provide the services, personalize your experience, and for analytics, marketing, and advertising. If you previously opted out of selling, sharing, or targeted advertising on this site, you will need to update your Privacy Choice.

On the Website, users can click either "Continue" or "Your Privacy Choices," to modify their privacy settings. ECF No. 17. The cookie banner remains displayed unless and until the user selects one of those two options. ECF No. 17 ¶ 6. Plaintiff states she clicked "Your Privacy Choices," toggled off the sale/sharing of personal information, and selected "Confirm My Choice" from the cookie banner and used the website Compl. ¶ 5. Upon making user choices, users are able to browse and interact with the Website. ECF No. 17 ¶ 7. Within the hyperlinked terms on the cookier banner, there are the terms of service ("TOS") which include the arbitration provision. ECF No. 17, Ex. A at 1. The first paragraph of the TOS provide:

> **IMPORTANT NOTE: PLEASE READ THESE TERMS OF SERVICE AND THE TERMS OF SERVICE FOR SPECIFIC VERSANT SERVICES LINKED BELOW CAREFULLY AS THEY MAY IMPACT YOUR LEGAL RIGHTS IN THE EVENT OF A DISPUTE BETWEEN US. SPECIFICALLY, PLEASE REFER TO THE SECTION TITLED "RESOLVING DISPUTES BETWEEN YOU AND VERSANT" OR, AS APPLICABLE "RESOLVING DISPUTES BETWEEN YOU AND" THE APPLICABLE VERSANT SERVICE, WHICH REQUIRES THAT CERTAIN DISPUTES BE RESOLVED THROUGH MANDATORY BINDING ARBITRATION AND PRECLUDE YOU FROM LEADING OR PARTICIPATING IN A CLASS ACTION, AS WELL AS THE SECTIONS TITLED "CLASS ACTION WAIVER" AND "JURY TRIAL WAIVER" WHICH**

> **CONTAIN A CLASS ACTION WAIVER AND JURY TRIAL WAIVER FOR NON-ARBITRABLE DISPUTES.**

*Id*. (emphasis in original)

Within the TOS, the agreement to arbitrate reads as follows:

> *Agreement to Arbitrate.* If Informal Dispute Resolution fails, then either party may initiate binding arbitration as the sole means to resolve Disputes, subject to the provisions following this header through and including the paragraph titled "Changes to this Arbitration Agreement" (collectively, the "Arbitration Agreement").
>
> The parties agree that this Arbitration Agreement is made pursuant to a transaction in interstate commerce and is governed by the Federal Arbitration Act ("FAA"). The arbitration will be administered by National Arbitration and Mediation ("NAM"). If NAM is not available to arbitrate, the parties will mutually agree on an alternative arbitration provider. In accordance with the notice and opt-out provisions set forth herein, this Arbitration Agreement is intended to be interpreted broadly and it applies to all Disputes between you and Versant, including but not limited to (1) claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement, or any prior agreement; and (2) claims that may arise after the termination of this Arbitration Agreement.
>
> Except as set forth in the paragraph below titled "Exceptions to Informal Dispute Resolution and Arbitration Agreement," the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all Disputes. You and Versant further agree that arbitrable Disputes include but are not limited to issues arising out of or relating to the interpretation, applicability, enforceability, formation, or performance of this Arbitration Agreement, including, but not limited to, any claim that all or any part of these terms are void or voidable, whether a claim is subject to arbitration, and any dispute regarding the payment, non-payment, or timing of any administrative or arbitrator fees.

ECF No. 17, Ex. A at 11-12.

The TOS defines disputes broadly to apply to various claims.

> This Arbitration Agreement is intended to be interpreted broadly and it applies to all Disputes between you and Versant, including but not limited to (1) claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement, or any prior agreement; and (2) claims that may arise after the termination of this Arbitration Agreement… [y]ou and Versant further agree that arbitrable Disputes include but are not limited to issues arising out of or relating to the interpretation, applicability, enforceability, formation, or performance of this Arbitration Agreement, including, but not limited to, any claim that all or any part of these terms are void or voidable, whether a claim is subject to arbitration, and any dispute regarding the payment, non-payment, or timing of any administrative or arbitrator fees.

*Id.*

Moreover, the agreement includes a class action waiver that prohibits class or collective actions.

> ***Class Action Waiver***
>
> **YOU AGREE THAT ANY DISPUTE BETWEEN YOU AND VERSANT THAT IS NOT SUBJECT TO ARBITRATION FOR ANY REASON MAY ONLY BE PURSUED BY YOU ON AN INDIVIDUAL BASIS, AND YOU MAY NOT BRING A CLAIM AS A PLAINTIFF OR A CLASS MEMBER IN A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION.**

*Id.* (emphasis in original)

The agreement also includes the right to opt out of the arbitration provision within 30 days. *Id*. at 16. Last, the arbitration terms provide that they shall be governed by the law of the U.S. and the State of New York. *Id*.

## II. Procedural History

On December 23, 2025, Plaintiff Alla Rada filed a complaint against Defendants Versant Media, LLC and E! Entertainment Television, LLC ("Defendants") Compl. On February 26, 2026, Defendants filed a Motion to Compel along with an accompanying memorandum of law in support of their motion. ECF Nos. 15-16. On the same day, Defendants also filed a declaration of Senior Manager, Tech Strategy employee Sameer Ayra in support of their motion to compel. ECF Nos. 17-17.1. On March 12, 2026, Plaintiff filed a response in opposition to Defendants' motion to compel arbitration. ECF No. 18. On March 19, 2026, Defendants filed a reply and declaration of Senior Manager, Tech Strategy employee Sameer Ayra in support of their motion to compel. ECF Nos. 19-20. On April 1, 2026, Plaintiff filed their sur-reply in response to Defendants' reply in support of their motion to compel arbitration. ECF No. 23.

**LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), which governs arbitration agreements, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that the FAA established "a liberal federal policy favoring arbitration agreements" and that courts must "rigorously . . . enforce arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (citation omitted). Parties may agree to have an arbitrator decide both "'gateway' questions of 'arbitrability'" and the merits of their contractual disputes. *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.,* 568 U.S. 63, 64–65 (2019). Questions of arbitrability include: "(1) 'whether the parties are bound by a given arbitration clause' and (2) 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 45 (E.D.N.Y. 2017) (quoting *VRG Linhas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013)).

When determining whether the parties have entered a valid agreement to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts," and evaluate the allegations "to determine whether they raise a genuine issue of material fact." *Sacchi v. Verizon Online LLC*, No. 14-cv-00423, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) (internal citations and quotation marks omitted). Indeed, when deciding a motion compel, courts must first determine "whether the parties agreed to arbitrate" in the first place. *Id*. The FAA provides that "'[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of [the] contract ... shall be valid, irrevocable, and enforceable.'" *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (quoting 9 U.S.C. § 2). "The party

seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022). The burden then "shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id*. (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). "[T]he federal policy in favor of arbitration requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks and citation omitted). However, this policy "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, (2022). Instead, "a court must hold a party to its arbitration contract just as the court would to any other kind [of agreement]." *Id*.

Courts must also decide "whether the issue of arbitrability is for the court or for the arbitrator." *Gringas v. Think Fin., Inc.*, 922 F.3d 112, 125 (2d Cir. 2019) (quoting *Bell*, 293 F.3d at 565). Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Schein*, 139 U.S. at 72 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The Supreme Court has "distinguished between 'questions of arbitrability,' which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other 'gateway matters,' which are presumptively reserved for the arbitrator's resolution." *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir. 2003) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)). Moreover, questions of arbitrability are subject to judicial resolution unless "there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that [those issues were to] be decided by the

arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation marks omitted).

Therefore, if on a motion to compel arbitration the court determines that (i) the existence of the arbitration agreement itself it not at issue, and (ii) that the dispute between the parties is within the scope of the arbitration agreement, then the court must "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

**DISCUSSION**

**I. Plaintiff Entered into a Valid and Enforceable Arbitration Agreement**

The dispositive question in this case is whether Plaintiff assented to Defendant's terms of service. The Court must first decide whether there is an agreement to arbitrate. "While federal policy generally favors arbitration, the obligation to arbitrate nevertheless remains a *creature of contract*. Because arbitrators' authority arises only when the parties agree in advance to that forum, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 648 (1986)) (emphasis added).

For a contract to be formed, there needs to be "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms."[1] *Meyer v.*

---

[1] Plaintiff cites to California law generally but to New York state law for state-law principles on contract formation. To determine whether Plaintiff formed a contract, the Court must turn to state-law principles. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 387 (E.D.N.Y. 2015) ("Determining the validity and enforceability of a contract is an issue of substantive state law."). As such, the Court must turn to substantive state law to determine the agreement's validity. There does not seem to be a dispute as to the applicability of New York state law here. However, in any

*Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). Here, Defendants contend that there was a valid arbitration agreement which provides as follows:

> [T]his Arbitration Agreement is intended to be interpreted broadly and it applies to all Disputes between you and Versant, including but not limited to (1) claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement, or any prior agreement; and (2) claims that may arise after the termination of this Arbitration Agreement… [y]ou and Versant further agree that arbitrable Disputes include but are not limited to issues arising out of or relating to the interpretation, applicability, enforceability, formation, or performance of this Arbitration Agreement, including, but not limited to, any claim that all or any part of these terms are void or voidable, whether a claim is subject to arbitration, and any dispute regarding the payment, non-payment, or timing of any administrative or arbitrator fees.

ECF No. 17, Ex. A at 12

Plaintiff argues that she is not bound by arbitration because Plaintiff did not manifest assent and Defendants have not met their burden in establishing such. *See* Opposition at 5 n.2 ("Plaintiff does not challenge whether she had reasonably conspicuous notice of the hyperlinked TOS, nor does Plaintiff argue that the arbitration agreement, if binding upon a finding of assent, encompasses her claims.") Thus, the Court must evaluate whether Plaintiff manifested assent to the terms.

**a. Plaintiff Assented to Terms of Service through Browser Activities**

The Second Circuit has "recognized that an offeree's manifestation of assent to an offeror's terms looks different for consumer contracts formed online, in which terms are usually unnegotiated and consumers often proceed without reading the fine print." *See Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (internal citation omitted). In the context of web-

---

event, the Court need not engage in a choice-of-law analysis between New York and California because there is no conflict between the two states' laws on this issue. Between New York and California law,
"the choice between California law and New York law [is not] dispositive with respect to the issue of whether an arbitration agreement was formed" and "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.' *Meyer*, 868 F.3d at 74. Therefore, the Court applies New York state law.

based contracts, the unambiguous manifestation of assent requirement need not necessarily be express acceptance. *See id*. at 704. However, "where it is not, there must be evidence that the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound." *See id*. In other words, "a court must determine whether a reasonably prudent user would understand his or her conduct to constitute assent to those terms." *See id*. In making this determination, courts have considered "(1) whether the interface clearly warned the user that taking a specific action would constitute assent to certain terms . . . (2) whether notice of the contractual terms was presented to the consumer in a location on the interface and at a time when the consumer would expect to receive such terms, . . . and (3) the course of dealing between the parties, including whether the contract terms were conspicuously presented to the consumer at each use of the offeror's service and the consumer's conduct in response to the repeated presentation of conspicuous terms." *See id*. at 704-705 (internal quotations and citations omitted).

For the reasons that follow, the Court finds that Plaintiff unambiguously manifested assent "through . . . conduct that a reasonable person would understand to constitute assent." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012).

**i. Website Warned Continuing Would Constitute Assent**

Plaintiff argues that "a reasonable user could assume that clicking the Continue Button was the action required to manifest assent to the TOS." ECF No. 18 at 8. Defendants argue that the website's banner, which states "By continuing, you agree to our Terms," means that Plaintiff's continued use of the website qualifies as assent under the reasonable person standard. ECF No. 19 at 3. "[T]he relevant inquiry is 'whether a reasonably prudent user would understand his or her conduct to constitute assent' to the Terms… not whether the Terms are enforceable or

unconscionable because of a lack of clarity or internal inconsistencies." *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 295 (E.D.N.Y. 2024) (internal citations omitted). There is an emphasis on "the importance of clearly signaling to the consumer in some fashion that, by continuing with the transaction or by using a website, she will be agreeing to the terms contained in an accompanying hyperlink." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 837 (2d Cir. 2021).

Moreover, "[c]ourts may be willing to overlook the utter absence of assent only when there are reasons to believe that the [allegedly assenting party] is aware of the [other party's] terms." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) (finding that the plaintiff did assent to the terms of service that were hyperlinked since plaintiff agreed to the terms of service by signing up for the platform). The relevant standard here is what a reasonable person would construe the language to mean. Reading the plain language meaning of the banner, "By continuing," does not limit the actions to expressly clicking a choice, it creates a broad and inclusive action of continuing use of the website.

Although not dispositive, within this circuit, upholding assent often involves more interaction between the user and the website, such as creating an account for the user platform or conducting a monetary transaction. *Facebook*, 841 F. Supp. 2d at 837; *Soliman*, 999 F.3d at 837. However, a distinguishing factor is that creating an account or conducting a transaction was the normal use for the user platforms within those cases. In this case, browsing the website and looking at entertainment related articles is the normal use of that website. As such, Plaintiff's actions of continuing to browse the website, navigate through it, and conduct normal use of the website creates an unambiguous manifestation of assent under the reasonable person standard.

**ii. Conspicuous Notice of the Contractual Terms**

Since October 29, 2025, when entering the Website to conduct browsing activity, users are immediately met with a cookie banner displayed at the bottom of the screen. On the cookie banner, the Terms of Service are bolded and hyperlinked. The cookie banner also contains the language, "By continuing, you agree to our Terms," and users are given two options, to click "Continue" or "Your Privacy Choices." ECF No. 17 at ¶ 3; Compl. ¶ 68. The cookie banner remains displayed unless and until the user selects one of those two options. Thus, users are required to acknowledge the choices before using the website. ECF No. 17 at ¶ 6. Plaintiff chose "Your Privacy Choices." Compl. ¶ 5. The consent to arbitration is related to continuing to use the website as it is intended, as evidenced by the banner stating "By continuing, you agree to our Terms." The options between choosing to click "Continue" or view further options by clicking "Your Privacy Choices," however, do not relate to consenting to the terms of service and thus the arbitration agreement. This choice relates to the *sharing of information*. By clicking "continue," you are therefore consenting to have your information shared, demonstrated by the choice between 'Continue" and "Your Privacy Choices":. By continuing to use the website, you are therefore consenting to the arbitration agreement.

Additionally, when clicking the hyperlinked terms to access the TOS, the first paragraph clearly states in bold capital letters the arbitration agreement. *See*, ECF No. 17 Ex. A at 2 ("…**WHICH REQUIRES THAT CERTAIN DISPUTES BE RESOLVED THROUGH MANDATORY BINDING ARBITRATION AND PRECLUDE YOU FROM LEADING OR PARTICIPATING IN A CLASS ACTION**…"). As such, the Court determines that there was sufficient notice of the contractual terms presented to Plaintiff. Indeed, "Plaintiff does not challenge whether she had reasonably conspicuous notice of the hyperlinked TOS." Opposition at 5 n.2.

**II. Plaintiff's Arbitration Agreement is Uncontested, Claims to be decided by Arbitrator**

Neither party has contested the scope of the arbitration agreement. In Plaintiff's opposition to Defendants' motion to compel, "Plaintiff [does not] argue that the arbitration agreement, if binding upon a finding of assent, encompasses her claims." ECF No. 18 at n.5. A court may only compel arbitration where it is "satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Moreover, the Second Circuit instructed courts to consider "whether, under ordinary principles of contract interpretation, a particular dispute is covered by the language to which the parties agreed." *Local Union*, 67 F.4th 107, 114 (2d Cir. 2023). When performing this analysis, "[i]f the [court determines that the] allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." *Gallagher v. Pepe Auto Grp.*, 2019 WL 801955, at *4 (S.D.N.Y. Feb. 21, 2019) (internal quotation marks and citation omitted).

Here, the Court has determined that Plaintiff unambiguously assented to the terms, and therefore assented to the arbitration agreement because there was conspicuous notice. The Arbitration Agreement intends to define disputes broadly,

> arbitration Agreement is intended to be interpreted **broadly and it applies to all Disputes** between you and Versant, including but not limited to (1) claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement, or any prior agreement; and (2) claims that may arise after the termination of this Arbitration Agreement.

ECF No. 17, Ex. A at 11-12.

These issues appear to be reserved for the arbitrator, but, in any event, Plaintiff does not challenge whether the claims are covered by the agreement. Accordingly, the Court refers Plaintiff's claims to arbitration.

### III. Defendant's Motion to Dismiss is Denied, Stay is Granted.

The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see also Porcelli v. JetSmarter, Inc.*, 2019 U.S. Dist. LEXIS 94287, at *11 (S.D.N.Y. June 5, 2019). Moreover, "[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 305 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011). It is up to the court's discretion whether to stay the case or dismiss the claims. The court can issues a stay instead of dismissal "because a 'stay would [ ] allow the Court, at a later stage, to address any claim or lingering issue that is not resolved in arbitration.'" *Lewis v. ANSYS, Inc.*, No. 19-CV-10427 (AJN), 2021 WL 1199072, at *9 (S.D.N.Y. Mar. 30, 2021). As that is the case here, the Court hereby **DENIES** Defendants' motion to dismiss and **STAYS** this case pending arbitration.

## CONCLUSION

For the reasons set forth by the Court, Defendants' motion to compel arbitration is **GRANTED** and this matter is **STAYED**. The parties are ordered to file a joint status report every 90 days regarding the status of arbitration, starting November 1, 2026. The Clerk of Court is respectfully requested to terminate ECF No. 15.

**SO ORDERED.**

**Dated: July 31, 2026**

**New York, New York**

**ANDREW L. CARTER, JR.**

**United States District Judge**